```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

TAHINI MOHAMED o/b/o L.M.M.,

Plaintiff,                                                08-CV-0598S

              v.                                        DECISION
                                                and ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

_____

## **INTRODUCTION**

Plaintiff Tahini Mohamed ("Mohamed" or "Plaintiff"), on behalf of her minor child, L.M.M. ("Claimant")[1], brings this action pursuant to 42 U.S.C. § 405(g), claiming that the Commissioner of Social Security ("Commissioner") incorrectly terminated the childhood Social Security Income ("SSI") benefits for L.M.M. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") William R. Pietz, which discontinued L.M.M.'s SSI benefits, was contrary to law and erroneous as it was not supported by substantial evidence in contained in the record.

---

[1] Claimant is a minor. Thus, in accordance with Rule 5.2(a) of the Federal Rules of Civil Procedure, she will be referred to as "Claimant" or by her initials in this Decision and Order.

Now before the Court is the Commissioner's motion for judgment on the pleadings and Plaintiff's cross-motion for a judgment on the pleadings, both pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g). For the reasons stated below, Plaintiff's cross-motion for a judgment on the pleadings is granted and the Commissioner's decision is reversed and remanded for calculation of benefits.

## BACKGROUND

On February 20, 2003, L.M.M. was awarded SSI benefits, based on an application that Plaintiff submitted on November 30, 2002.[2] (Tr.[3] 31, 80-2). L.M.M. began receiving SSI benefit because it was determined that her hearing impairment and speech-language impairments were functionally equivalent to a "listed" impairment. (Tr. 32). However, after a continuing disability review, L.M.M. received a notice dated October 25, 2006 indicating that her benefits would be terminated as of December 2006 because she was no longer disabled. (Tr. 42). In response to L.M.M.'s SSI benefit termination, Plaintiff filed a Request for Reconsideration, while electing to continue to receive benefits on behalf of L.M.M. pending the appeal. (Tr. 46-7). Pursuant to Plaintiff's request, an administrative hearing was held on December 19, 2007 before

---

[2]The disability onset date for L.M.M. was November 1, 2002.

[3]Citations to "Tr." refer to the Transcript of the Administrative Proceedings.

2

Administrative Law Judge ("ALJ") William R. Pietz. (Tr. 386-99). At the hearing, where L.M.M. and Plaintiff were represented, the ALJ considered the case de novo and rendered a written decision on January 10, 2008 that concluded that L.M.M. was not disabled. (Tr. 13-30). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on June 13, 2008. (Tr. 5-7). This action followed.

## DISCUSSION

### I. APPLICABLE LEGAL STANDARDS OF REVIEW

#### A. Standard of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The

Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

**B. The Applicable Legal Standard for Determining Disability of a Child for SSI Benefits**

Under the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, ("PRWORA"), Pub.L. No. 104-193, 1996 U.S.C.C.A.N. (110 Stat.) 2105, a disability exists for the purposes of SSI benefits if a child under the age of eighteen:

> [1] has a medically determinable physical or mental impairment, [2] which results in marked and severe functional limitations, and [3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ... [however,] no individual under the age of who engages in substantial gainful activity...may be considered to be disabled.

42 U.S.C. § 1382c(a)(3)(C)(i)-(ii), see, e.g., Encarnacion v. Astrue, 568 F.3d 72, 75 (2d Cir.2009); Pollard v. Halter, 377 F.3d

183, 189 (2d Cir.2004); Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir.2002); Quinones v. Chater, 117 F.3d 29, 33 n. 1 (2d Cir. 1997).

Under the regulations, there is a three-step process for determining whether a child is disabled and eligible for benefits. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). If the child engages in substantial gainful activity, there can be no finding of disability. 20 C.F.R. § 416.924(a)-(b). If not, the ALJ proceeds to step two and determines whether the child has a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the impairment(s) constitute a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the child will not be found to have a severe impairment. 20 C.F.R. § 416.924(c); see also, Encarnacion v. Astrue, 568 F.3d at 75. If there is a finding of severe impairment, however, the ALJ proceeds to step three, where it is determined whether the impairment(s) meet, medically equal, or functionally equal the listings. An impairment(s) causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment listed in the listing [of Impairments in appendix 1 of subpart P of part 404 of this chapter], or if it functionally equals the listings. 20 C.F.R.

5

§ 416.924(d). If this equivalency test is satisfied, and the statute's durational requirement is satisfied as well, then the child will be found to be disabled. 20 C.F.R. § 416.924(d)(1). Otherwise, the child will be found to have no disability. 20 C.F.R. § 416.924(d)(2).

For the child to "functionally equal the listings," their impairment "must result in 'marked' limitations in two of the six domains[4] of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a), see also, Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190; Encarnacion v. Barnhart, 331 F.3d at 84-85. A "marked limitation" is one where the "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190. An "extreme" limitation is one where the "impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i); Encarnacion v. Astrue, 568 F.3d at 75; Pollard v. Halter, 377 F.3d at 190.

---

[4] The six functional domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well being." 20 C.F.R. § 416.926a(b)(1).

## C. The Applicable Legal Standard for Termination of Disability Benefits

Once a child is found to be disabled, their continued eligibility for benefits needs to be periodically reviewed. 20 C.F.R. §416.994a(a). A child's benefits may be discontinued only if there is a finding, supported by substantial evidence, that there has been a medical improvement in the child's impairment(s), which no longer result in extreme or marked limitations. 42 U.S.C. § 1382c(a)(4)(B)(I). In performing the periodic review, the Commissioner prescribes a three-step sequential evaluation to determine whether the child remains disabled. 20 C.F.R. §416.994a(b). First, the Commissioner will determine if there has been any "medical improvement"[5] in the child's condition. 20 C.F.R. § 416.994a(b)(1). If no medical improvement is found, then the child continues to be disabled. 20 C.F.R. § 416.994a(b)(1). Second, if there has been a medical improvement, the Commissioner considers whether the child's impairment(s) still meet or equal the severity of the listed impairment it met or equaled at the time of the most recent favorable determination that the child was disabled. 20 C.F.R. § 416.994a(b)(2). If the impairment does, the child's disability will be found to continue. Id. If the impairment does

---

[5]Medical improvement is defined as "any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child] w[as] disabled or continued to be disabled.... based on changes (improvement) in the symptoms, signs, or laboratory findings associated with [the child's] impairment(s)." 20 C.F.R. § 416.994a(c).

7

not, then the Commissioner proceeds to the third step, where it must determine whether the child is currently disabled under the rules for determining eligibility in initial disability claims for children. 20 C.F.R. § 416.994a(b)(3).

**II. THE ALJ'S DECISION TO TERMINATE L.M.M.'S BENEFITS WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.**

In a decision dated January 10, 2008, the ALJ followed the three- step evaluation to determine whether L.M.M. continued to remain disabled. (Tr. 16-30). The ALJ determined that L.M.M. did have a medical improvement and that her impairments were no longer functionally equal to the Listings of Impairments because she did not suffer from marked limitations in the Acquiring and Use Information domain or the Interacting and Relating with Others domain. (Tr. 20, 23-26).

Plaintiff argues that substantial evidence did not exist in the record to support the ALJ's finding that L.M.M. no longer had marked limitations in the functional domains of Acquiring and Using Information and Interacting and Relating with Others. See Plaintiff's Memorandum of Law ("Pl. Mem.") at 17 (Docket No. 14). However, the Commissioner contends that there is substantial evidence contained within the record that supports the ALJ's determination that L.M.M. is no longer disabled. See Defendant's Memorandum of Law ("Def. Mem.") at 18 (Docket No. 11).

**1. The ALJ's determination that L.M.M. no longer had a marked impairment in the Acquiring and Using Information domain is not supported by substantial evidence in the record.**

The ALJ's determination with regard to this domain ignores substantial evidence contained within the record that indicates that L.M.M. continues to have a marked limitation in the Acquiring and Using Information domain. In reviewing the ALJ's decision, the only evidence cited in support of his decision that L.M.M.'s limitation had become less than marked in this domain was the fact that she was in the normal grade level for her age. (Tr. 24).

In the Acquiring and Using Information domain, the Commissioner must consider how well a child acquires or learns information, and how well he can use the information he has learned. See 20 C.F.R. § 416.926a(g). The regulations direct the ALJ to take into account that a child of L.M.M.'s age "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. § 416.926a(g)(2)(iv). The child also "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing ... ideas, and by understanding and responding to the opinions of others." Id. A child with limited functioning would be indicated by: (1) the inability to "demonstrate understanding of words about space, size, or time;" (2) the inability to demonstrate rhyming skills; (3) "difficulty recalling important things you learned in school yesterday;"

9

(4) "difficulty solving mathematics questions or computing arithmetic answers;" and (5) ability to "talk only in short, simple sentences...." 20 C.F.R. § 416.926a(g)(3)(i)-(v).

In the ALJ's decision, there is no evidence that the ALJ considered any information beyond L.M.M.'s current grade level. Most importantly, the ALJ rejected the Disability Hearing Officer's determination that L.M.M. continued to suffer from a marked limitation within this domain without citing any reason for doing so. (Tr. 320). Social Security Ruling 96-6p requires an ALJ to explain in his decision the weight that was afforded to the opinions given by state agency medical or psychological consultant. However, the ALJ failed to state a reason for his rejection of the Disability Hearing Officer's opinion that L.M.M.'s hearing impairment and speech-language disorders continues to significantly interfere with her ability to acquire and use information which results in a marked limitation. (Tr. 312). In addition, the ALJ disregarded the statement submitted by L.M.M.'s hearing impaired teacher, Kathleen Herzig, dated December 11, 2007 because "[her] letter appears to have been written specifically for the representative's benefit." (Tr. 22). It is well established that even a doctor's opinion "advocating his patient's cause is not a good reason to reject his opinion as a treating physician." McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002)(citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). In her letter,

Ms. Herzig rated as a "very serious problem": the child's inability to understand school and content vocabulary; her inability to comprehend and do math problems; her inability to express ideas in written form and apply in problem-solving in class discussions. The ALJ acknowledged in his decision that Ms. Herzig explained that "the claimant would be failing without extensive one-on-one intervention by a teacher of the hearing impaired and classroom accommodations." (Tr. 22.) However, the ALJ rejected ". . . the (L.L.M.'s) representative's implied argument that the claimant has "extreme" limitations in the domain of acquiring and using information" because ". . . it is quite conspicuous that [Ms. Herzig] did not indicate in the April 2007 questionnaire that the claimant had such severe problems in the domain of acquiring and using information." (Tr. 22.) The ALJ's decision to reject Ms. Herzig's evaluations is an unwarranted conclusion that is not supported by the evidence contained within the record. The ALJ failed to give significant weight to Ms. Herzig's opinion, let alone rejecting it, even though it was not medical in nature. The opinion of a teacher who works with a child on a daily basis and observes her in a social setting with peers, as well as adults, is an invaluable method to ascertain the severity of an impairment and requires careful consideration. See Quinones v. Chater, Id. In a questionnaire dated April 7, 2006, Ms. Herzig indicated that she had been teaching L.M.M. for 60 minutes each day for four years.

11

(Tr. 244-251.) On December 11, 2007, Ms. Herzig supplemented her April 2006 questionnaire and in responding to questions concerning attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for self, and medical conditions, L.M.M. remained unchanged. She did believe, however, that L.M.M.'s ability in terms of acquiring and using information had worsened. She wrote that L.M.M. had "serious" problems with comprehending oral instructions, reading, and comprehending written material, providing organized oral explanations and adequate descriptions, and learning new materials. She stated that L.M.M. would be falling behind at school without extensive one-on-one intervention by a teacher for the hearing impaired. (Tr. 364.)

Social Security Ruling 06-3p provides that non-medical sources like teachers, who have contact with claimants in their professional capacity are valuable resources for assessing the severity of claimant's impairments and the impact on claimant's ability to function on a day-to-day basis.[6] Thus, Ms. Herzig's opinion and observations are particularly relevant since she taught L.M.M. on a daily basis and was in a favorable position to evaluate L.M.M. for progress over a period of time. Ms. Herzig also acknowledges that L.M.M. has a "much larger gap in mastering the content areas and is very far behind her peers." Id. Ms. Herzig's

---

[6]Acceptable medical sources who may be considered as evidence of impairments are "educational personnel . . . for example, school teachers." 20 C.F.R. § 404.1513(d)(2).

opinions are supported by L.M.M.'s test scores and Individualized Education Plan and the determination that she had a marked limitation in this domain.

Finally, the ALJ notes that "Ms. Herzig also said that the plaintiff's hearing ability has declined" but that "the same testing . . . revealed . . . the claimant's hearing aids were adjusted only slightly to accommodate the increased hearing loss." (Tr. 22.) Not only is the ALJ not qualified to make a medical determination as to the severity of the plaintiff's hearing loss,[7] he mischaracterizes the Hearing Evaluation Record of 2/15/06 which actually states: "Today's results indicate a significant change since her audiogram done 2/15/05. <u>The gain of her current hearing aids was increased to compensate for her increased hearing loss</u>." (Emphasis added.) (Tr. 343.) None, of the ALJ's reasons are adequate to justify dismissing Ms. Herzig's opinions in light of her qualifications to make such opinions and doing so, was error.

This Court finds that the record contains persuasive proof that L.M.M. continues to have marked limitation in the domain of Acquiring and Using Information domain. Even though, L.M.M. is in an age-appropriate class, she requires intensive additional services to keep her at that level, including an extended school year. (Tr. 222-24). According to Social Security Ruling 09-2p,

---

[7]See Goldthrite v. Astrue, 535 F.Supp.2d 329, 339 (citing Gilbert v. Apfel, 70 F.Supp.2d 285, 290).

> if a child needs a person, structured or supportive setting, medication, treatment, or a device to improve or enable functioning, the child will not be as independent as same-aged peers who do not have impairments. . .[and] such a child has a limitation, even if the child is functioning well with the help.

Therefore, L.M.M.'s ability to remain in an age-appropriate grade level is only due to the extensive intervention and constant support at school, without which she would be failing. (Tr. 364). In sum, this Court finds that substantial evidence of the record supports that L.M.M. continues to have a marked limitation in the Acquiring and Using Information domain.

### 2. The ALJ's determination that L.M.M. no longer had a marked impairment in the Interacting and Relating with Others domain is not supported by substantial evidence in the record.

In L.M.M's continuing disability review, the ALJ found that L.M.M. has a less than marked limitation in Interacting and Relating with Others. (Tr. 26). The ALJ's only support for this finding is that L.M.M.'s intelligibility rate increased from 60 percent to 70 to 90 percent. Id. Paradoxically, the ALJ also states that L.M.M. has significant limitations in understanding non-verbal communication and using grammar to meet her needs. Id. Plaintiff argues that the ALJ's finding is not supported by substantial evidence in the record, especially since the 90% intelligibility rate was only derived from a report filled out by L.M.M's father discussing the extent to which he could understand her. See Pl. Mem. at 25. In reviewing the record, this Court

14

finds that the ALJ's decision that L.M.M. had a less than marked limitation in the Interacting and Relating with Others domain is not supported by substantial evidence.

The domain of Interacting and Relating with Others takes into consideration how well the child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). For L.M.M.'s age group (age 6-12), the Regulations provide that:

> when you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. 416.926a(i)(2)(iv). While the ALJ contends that L.M.M.'s limitation in this domain is less than marked, his decision also recognizes that she has significant limitations in understanding non-verbal communications. (Tr. 26). The ALJ's acknowledgment that L.M.M. has serious limitation within this domain is also supported in the record by L.M.M.'s hearing impaired teacher, Kathleen Herzig, who stated that L.M.M. had very serious limitations when interpreting facial expressions, body language, hints, sarcasm, and a general inability to express thoughts and ideas in everyday conversation. (Tr. 247). In addition,

15

Ms. Herzig, who worked with L.M.M. on a daily basis, stated in 2007 that she is only intelligible one-half to two-thirds of the time in unknown context, although it improves with repetition. (Tr. 248). This opinion, which I find to have been improperly disregarded by the ALJ, is evidence that L.M.M. continues to have marked limitation according to Social Security Ruling 98-1p. The state's consultative examiner also concluded that L.M.M.'s intelligibility decreased significantly when she engaged in conversational speech. (Tr. 309). Lastly, in a letter dated December 6, 2007, Tricia Giambelluca, a mental health counselor, indicated that L.M.M. suffers from depression and difficulty in social interactions because she is teased because of her hearing aides and short stature. (Tr. 365). Ms. Giambelluca also states that L.M.M. has trouble making friends and is afraid that she is not accepted. Id. This evidence continues to offer significant proof that L.M.M. has a marked limitation in this domain.

For the reasons stated above, the ALJ's decision that L.M.M. no longer had marked limitation within the domains of Acquiring and Using Information and Relating and Interacting with Other is not supported by substantial evidence in the record. The ALJ's failure to consider all evidence contained within the record, specifically his rejection of the opinion of L.M.M.'s teacher, who interacted with her on a regular basis over a significant period of time and could best explain her limitations, was error. 42 U.S.C. § 1382c(a)(4); see also Quinones v. Chater, Id. Further, this

Court concludes that the record does contain substantial evidence that L.M.M. continues to have marked limitations within the two domains and reverses the Commissioner's decision.

**III.     Remand for Calculation of Benefits**

In the Second Circuit, a court may remand solely for the calculation of benefits when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)). In addition, a court may grant a remand for calculation of benefits when the record "compel(s) but one conclusion under the ... substantial evidence standard." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987); see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

Accordingly, this Court finds that the record contains substantial evidence that L.M.M. continues to have marked limitations within the two aforementioned domains.

**CONCLUSION**

For the reasons set forth above, this Court finds that the Commissioner's decision terminating L.M.M.'S disability benefits was not supported by substantial evidence in the record. I find

that substantial evidence in the record demonstrates that L.M.M. continues to suffer from marked limitations in the domains of acquiring and using information and interacting and relating with others as a result of the many limitations caused by her hearing impairment. I therefore grant judgment on the pleadings in favor of the Plaintiff, and remand this matter to the Commissioner for calculation of benefits.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
June 29, 2010